# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REBECCA MOTT, <br><br> Plaintiff, <br><br> v. <br><br> GUARANTEED RATE, INC., <br><br> Defendant. | Case No. |

## COMPLAINT AND JURY DEMAND

Rebecca Mott ("Mott" or "Plaintiff"), by her attorneys, states the following as her Complaint against defendant Guaranteed Rate, Inc. ("GRI"):

## INTRODUCTION

1. This is an action for violations of the Lanham Act, Illinois' Right to Publicity Act and Illinois' Consumer Fraud and Deceptive Business Practices Act.

2. It arose when GRI, a mortgage lender, intentionally used Mott's likeness to create confusion and mislead consumers into believing Mott, an experienced mortgage broker with a large following of current and former customer contacts, remained employed at GRI for several months after she resigned from GRI on January 28, 2020.

3. For several months after Mott's resignation, GRI engaged in a deliberate and misleading campaign, designed to perpetrate a fraud on consumers to create the false impression that Mott remained associated with and employed by GRI. These efforts included mailing thousands of postcards which contained Mott's image and former GRI contact information to borrowers, realtors, and builders in Mott's customer database; leaving her image and contact information on GRI's website; and leaving her voicemail message intact, which indicated she remained employed at GRI, despite the fact that she had resigned months earlier.

1

4. As a direct result of GRI's campaign, consumers were tricked into believing Mott remained associated with GRI. To add insult to injury, after Plaintiff resigned her employment with GRI, GRI unlawfully withheld her outstanding earned commissions and retained her personal property, including but not limited to custom office furniture and signage that Mott had paid for out of her own pocket.

5. Worse still, this is not an isolated incident or an innocent mistake. To the contrary, GRI systematically engages in false advertising and unlawfully uses the likenesses of its departing loan officers and other employees as part of its routine business practices. Indeed, GRI has done the very same thing, to the same effect, with respect to a number of other ex-employees, including but not limited to Harry "Rick" Richter and Greg Thomas.

## PARTIES AND JURISDICTION

6. GRI is a Delaware corporation in the mortgage banking industry with its principal place of business in Chicago, Illinois.

7. Mott is an individual who resides in Mokena, Illinois.

8. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because this action arises in part under the Lanham Act, 15 U.S.C. 1051 § *et seq.*, and as provided for in 28 U.S.C. § 1367, this Court shall exercise supplemental jurisdiction over the state law claims asserted herein.

9. This Court has personal jurisdiction over GRI because GRI resides in or have regular and established place of business within this District.

10. Venue is proper in this District pursuant to (i) 28 U.S.C. § 1391(b)(1) because GRI resides in and has a regular and established place of business within this District; and (ii) 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Mott's claims occurred in this judicial district.

## BACKGROUND

11. Mott is a highly successful mortgage broker, who has worked in the mortgage industry for over 19 years.

12. Over the course of her career, Mott has provided advice, counseling and services to thousands of customers in connection with the purchase or refinance of their homes.

13. Mott has spent nearly two decades earning and maintaining a sterling reputation as a successful mortgage broker, and building a large contact database of over 3,500 clients, real estate agents, builders, financial planners, and real estate attorneys (the "Mott Database").

14. GRI hired Mott in 2014 as a Vice President of Mortgage Lending, and eventually promoted her to the role of Producing Branch Manager of the GRI branch located in Mokena, Illinois.

15. Throughout her time at GRI, Mott was responsible for originating and closing mortgage loans. She generally closed anywhere from $2,500,000 to $4,000,000 in loans every month, and amassed a database of thousands of borrowers, realtors, and real estate attorneys, which contained personal information, such as birthdays, specific to those individuals.

16. On January 28, 2020, Mott resigned from GRI and joined another mortgage lender, CrossCountry Mortgage ("CCM").

17. Despite Mott's departure, on or about February 18, 2020, GRI sent individual postcards to each person and/or entity in the Mott Database, falsely representing that Mott remained employed at GRI and soliciting her contacts' continued business on that basis.

18. Sometime thereafter, GRI sent a second round of individual mailings to each person and/or entity in the Mott Database, again falsely representing that Mott was still a GRI employee and soliciting business on that basis.

114045581.v1

19. These mailings coincided with historically low mortgage rates and very high demand for mortgages.

20. After Mott's resignation, GRI sent birthday greeting e-mails to individuals in the Mott Database; these e-mails stated, among other things: "Thank you for your business and referrals. It means the world to me!"

21. GRI's birthday e-mails falsely identified Mott as a Vice President of Lending in GRI's Mokena Office.

22. After Mott's resignation, GRI also kept Mott's image and contact information on its website, falsely showing that she was the branch manager of GRI's Mokena Office.

23. Likewise, GRI kept Mott's voicemail message on her former GRI phone number active, falsely indicating that she was then-currently still employed at GRI.

**COUNT I: FALSE ENDORSEMENT – LANHAM ACT, 15 U.S.C. §1125 (A)(1)(A)**

24. Plaintiff restates and realleges the allegations set forth in Paragraphs 1 through 23 as though set forth fully herein.

25. Mott is well known in the Chicago real estate market and recognized as a superior mortgage broker. There is clear commercial value in her identity and reputation as reflected by her loyal customer base.

26. GRI has willfully, knowingly and wrongfully used Mott's name and likeness to intentionally confuse consumers into believing she endorsed GRI after her departure by (i) sending mass mailings and e-mails that contained her name and contact information and indicated she continued to be employed at GRI; (ii) leaving her name and GRI contact information on GRI's website; and (iii) keeping her GRI voicemail active for months.

114045581.v1

27. GRI's conduct has created a likelihood of confusion with consumers who are looking to obtain mortgages.

28. As a result of GRI's conduct, Mott has been damaged by actual consumer reliance on the misleading statements and has suffered actual injury in the form of lost revenue and profits from consumers who obtained mortgages through GRI, thinking that Mott remained employed there and/or endorsed GRI.

29. As a result of GRI's conduct, GRI has unjustly enriched itself by closing on – and earning commissions from - mortgage loans while consumers mistakenly thought that Mott was still employed at GRI, and by benefiting from the goodwill associated with Mott's name.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order (a) awarding Mott treble the amount of her damages, as determined at trial; (b) ordering GRI to disgorge any funds obtained through its use of Mott's name, likeness, voice recording or image; (c) ordering GRI to perform corrective advertising; and (d) awarding Mott the costs of this action, including but not limited to attorney fees.

**COUNT II: FALSE ADVERTISEMENT – LANHAM ACT, 15 U.S.C. §1125(A)(1)(B)**

30. Plaintiff restates and realleges the allegations set forth in Paragraphs 1 through 23 as though set forth fully herein.

31. Mott is well known in the Chicago real estate market and recognized as a superior mortgage broker. There is clear value in her identity and reputation as reflected by her loyal customer base.

32. GRI has wrongfully used Mott's name and likeness to intentionally confuse consumers into believing she endorsed GRI and remained employed by GRI after her resignation

5
114045581.v1

by sending mass mailing advertisements and e-mails for GRI that contained Mott's name and contact information and indicated that Mott remained employed at GRI.

33. GRI's mass mailings and e-mails were commercial advertisements for its products and services and contained Mott's likeness in an effort to create a likelihood of confusion with consumers who are looking to purchase mortgages.

34. GRI's mass mailings and e-mails deceived or had the tendency to deceive each consumer of mortgages that received the mailing that Mott remained employed with GRI.

35. As a result of GRI's conduct, Mott has been damaged by actual consumer reliance on the misleading statements and has suffered actual injury in the form of lost revenue and profits from consumers who purchased mortgages through GRI, thinking that Mott remained employed there.

36. As a result of GRI's conduct, GRI has unjustly enriched itself by closing on – and earning commissions from - mortgage loans while consumers mistakenly thought that Mott was still employed at GRI.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order (a) awarding Mott treble the amount of her damages, as determined at trial; (b) ordering GRI to disgorge any funds obtained through its use of Mott's name, likeness, voice recording or image; (c) ordering GRI to perform corrective advertising; and (d) awarding Mott the costs of this action, including but not limited to attorney fees.

## **COUNT III: VIOLATION OF ILLINOIS' RIGHT TO PUBLICITY ACT, 765 ILCS 1065/1**

37. Plaintiff restates and realleges the allegations set forth in Paragraphs 1 through 23 as though set forth fully herein.

38. GRI's mass mailings and e-mails contained a photograph of Mott, identified her by name and her unique NMLS identification number, and provided her contact information at GRI.

39. GRI's mass mailings, which were sent to thousands of individuals, and e-mails were sent without Mott's consent.

40. GRI's mass mailings and e-mails were sent willfully and violate Illinois' Right to Publicity Act, 765 ILCS 1075/1 *et al.*

41. GRI's violation of the Right to Publicity Act with respect to Mott is not an isolated incident or an innocent mistake, but is instead typical of its practices when a loan officer or other employee resigns from GRI's employ.

42. GRI engaged in the same behavior after Richter and Thomas (the "Former GRI Employees") resigned. Among other things, GRI has sent mailers to each of the Former GRI Employees' contacts, maintained webpages listing the Former GRI Employees as current GRI employees, left certain of the Former GRI Employee's names on the exterior of GRI office buildings, and continued to advertise the Former GRI Employees through Google AdWords.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order awarding Plaintiff the following relief:

(a) The greater of Plaintiff's actual damages or $1,000 for each violation, pursuant to 765 ILCS 1075/40(a);

(b) Punitive damages for GRI's willful violation of Section 30 of the Right to Publicity Act pursuant to 765 ILCS 1075/40(b);

(c) Reasonable attorneys' fees, costs and expenses pursuant to 765 ILCS 1075/55; and

114045581.v1

(d) A permanent injunction, enjoining GRI from sending out any further promotional or advertising materials using Mott's likeliness without her written consent pursuant to 765 ILCS 1075/50.

## COUNT IV: VIOLATION OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 et seq.

43. Plaintiff restates and realleges the allegations set forth in Paragraphs 1 through 23 as though set forth fully herein.

44. GRI's mass mailings and e-mails contained a photograph of Mott, identified her by name and provided her contact information at GRI.

45. GRI's mass mailings, which were sent to thousands of individuals, and e-mails were sent without Mott's written consent.

46. At the time GRI sent the mass mailings and e-mails, Mott was no longer working at GRI. Despite that, GRI tried to capitalize on Mott's excellent reputation and goodwill with consumers and sent the mass mailing out with the hope that consumers would purchase a mortgage through GRI due to its supposed affiliation with Mott.

47. GRI sent the mass mailings and e-mails with the intent to deceive consumers into believing that Mott remained affiliated with GRI, knowing full well that she had resigned prior to the mass mailings being sent.

48. In addition to the mass mailings and e-mails, GRI deceived consumers for months by keeping Mott's image and contact information on its website and keeping Mott's voicemail active.

49. As a result of GRI's fraud on consumers, Mott lost commissions on mortgages that GRI closed as a result of the confusion GRI intentionally caused in the mortgage marketplace.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order awarding Plaintiff the following relief:

a. Plaintiff's actual damages in an amount to be determined at trial;

b. Punitive damages;

c. Attorneys' fees and costs; and

d. Any other relief deemed appropriate pursuant to 815 ILCS 505/10a.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

Date: September 9, 2020

REBECCA MOTT

By: /s/ Jeffrey L. Widman
One of her attorneys

Jeffrey L. Widman (#6226367)
Laura E. Caplin (#6297784)
FOX ROTHSCHILD LLP
321 N. Clark Street, Suite 1600
Chicago, IL 60654
(312) 517-9200