**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| REBECCA MOTT, | |
| Plaintiff, | |
| v. | Case No. 20-cv-05322 |
| GUARANTEED RATE, INC., | |
| Defendant. | |

**PLAINTIFF REBECCA MOTT'S MEMORANDUM IN SUPPORT OF HER**
**MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY INJUNCTION AGAINST DEFENDANT**
**<u>GUARANTEED RATE, INC.</u>**

Plaintiff Rebecca Mott, by her undersigned submits this Memorandum in support of her

Motion for Entry of Temporary Restraining Order and Preliminary Injunction (the "Motion")

against Defendant Guaranteed Rate, In

# TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………………….…....1

II.     PROCEDURAL BACKGROUND……………………………………………......2

   A. Mott's Allegations in her Previously Filed Complaint against Guaranteed Rate, Inc……………………………………………………………………...........2

   B. This Court Stayed the Instant Complaint Pending Arbitration On the Merits of Mott's Claims for Violations of the Lanham Act, Right to Publicity Act and Consumer Fraud and Deceptive Practices…………………………………………2

   C. Mott Recently Discovered GRI Using Her Name and Image on Its Webpage Portal Requires The Entry of a Temporary Restraining Order and Preliminary Injunction…………………………………………………………………………3

III.    STATEMENT OF FACTS……………………………………………………….4

   A. Mott's Employment with GRI…………………………………………………….4

   B. Mott Sends Cease and Desist to GRI To Stop Falsely Using Her Name And Image to Mott's Customers and the General Public………………………………………5

   C. Mott Filed the Instant Action against GRI on September 9, 2020………………...6

   D. Mott Recently Discovered GRI's Current Use of Mott's Name and Image and Providing False Information Notwithstanding the Cease And Desist Letter and the Pending Arbitration Claims………………………………………………………..8

IV.     ARGUMENT……………………………………………………………………..10

   A. This Court Has Jurisdiction to Issue Preliminary Injunction Pending An Arbitration…………………………………………………………………………..11

   B. Mott Will Likely Succeed on the Merits Of Her Claim For Violations of the Lanham Act and Right to Illinois' Right to Publicity Act………………………..12

   C. Mott Lacks An Adequate Remedy at Law and Will Suffer Irreparable Harm If an Injunction is Not Granted…………………………………………………...16

   D. The Balance of Harms And Public Interest Weigh Decidedly In Mott's Favor......17

V.      CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs v. Mead-Johnson & Co.*,
            971 F.2d 6, 11 (7th Cir. 1992)……………………….…………………10, 16

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
            784 F.3d 887 (2d Cir. 2015)………………..……………………………11

*Christian Dior Couture, S.A. v. Liu*,
            2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015)..........................18

*Eli Lily & Co. v. Natural Answers, Inc.*,
            233 F.3d 456, 461 (7th Cir. 2000)……………………………….……………11

*General Mills, Inc. v. Champion Petfoods USA, Inc.*,
            2020 U.S. Dist. LEXIS 13408 (S.D.N.Y. Jan. 27, 2020)……….………11

*Huawei Techs. Co. v. Motorola, Inc.*,
            2011 U.S. Dist. LEXIS 17165 (N.D. Ill. Feb. 22, 2011)...........................16

*IDS Life Ins. Co. v. SunAmerica, Inc.*,
            1996 U.S. Dist. LEXIS 5568 (N.D. Ill. April 25, 1996)…………………11

*Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
            735 F.3d 735 (7th Cir. 2013)....................................................................16, 17

*Kraft Food Holdings, Inc. v. Helm*,
            205 F.Supp.2d 942, 956 (N.D. Ill. June 7, 2002)..........................................19

*L.S. Health & Son, Inc. v. AT & T Info. Sys., Inc.*,
            9 F.3d 561 (7th Cir. 1993).............................................................................13

*Luxottica Group S.p.A v. Light in the Box Ltd.*,
            2016 U.S. Dist. LEXIS 144660 (N.D. Ill. Oct. 19, 2016)……….………10

*Maremont v. Susan Fedman Design Group, Ltd.*,
            772 F. Supp. 2d 967 (N.D. Ill. March 15, 2011)..........................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*,
            999 F.2d 211 (7th Cit. 1993)………………………………….……………11

*Nicosia v. Amazon.com, Inc.*,
            834 F.3d 220 (2d Cir. 2016)………………………….……………………11

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
      469 U.S. 189 (1985)..................................................................18

*Pomatek Industries, Ltd. v. Equitrac Corp.*,
      300 F.3d 808 (7th Cir. 2002).............................................16, 17

*Prudential Ins. Co. of Am. v. Hosto*,
      No. 08-674, 2008 WL 4482882 (S.D. Ill. Oct. 2, 2008)...............10

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
      No. 505-00016, 2005 WL 552593 (W.D. Va. Mar. 1, 2005)..............18

*Stayart v. Yahoo! Inc.*,
      651 F.Supp.2d 873 (E.D. Wis. 2009).......................................13

*Turnell v. CentiMark Corp.*,
      796 F.3d 656 (7th Cir. 2015)...............................................10

*Ty, Inc. v. The James Group, Inc.*,
      237 F.3d 891 (7th Cir. 2001)...............................................10

*Waits v. Frito-Lay, Inc.*,
      978 F.2d 1093 (9th Cir. 1992).............................................13

*Whitaker v. Kenosha Unified Sch. Dist.*,
      858 F.3d 1034 (7th Cir. 2017)...........................................12

## Statutes

15 U.S.C. § 1125 (A)(1)(A)..........................................................2, 3, 12

15 U.S.C. § 1125 (A)(1)(B)..........................................................2, 4, 12

765 ILCS 1065/1.......................................................................2, 3, 4

815 U.S.C. § 505/1......................................................................2, 3

15 U.S.C. § 1116.......................................................................10

Fed.R.Civ.P. 65.......................................................................10

## I.     INTRODUCTION

Plaintiff Rebecca Mott ("Mott") has recently uncovered that Defendant Guaranteed Rate, Inc. ("GRI") is using a picture of Mott, her name and providing false information on its webpage portal to numerous individuals which requires an immediate injunction to remove the website postings. Mott's discovery has revealed that GRI's webpage portal of active online accounts contain Mott's picture; identifies Mott as the loan officer with GRI; identifies Mott's NMLS number being associated with GRI; contains a purported contact number for Mott; and contains Mott's current purported email address of [rebeccamottpod@rate.com](mailto:rebeccamottpod@rate.com). The information provided on GRI's webpage portal for the active online accounts related to Mott is false, deceptive and misleading to Mott's past clients and as well as the general public.

Clearly, GRI cannot self-police its activities because Mott has previously sent a cease and desist letter to GRI – ***over two years ago*** – requesting that GRI no longer use Mott's name, likeness and image after her resignation. Not only that, but Mott is currently pursuing claims against GRI in a pending arbitration for GRI's improper and unauthorized use of Mott's name, likeness and image after she resigned from GRI on January 28, 2020.

Despite a prior cease and desist letter and despite a pending lawsuit against GRI for its improper use of Mott's name, likeness and image, GRI is surreptitiously using Mott's name and image on its webpage portal without Mott's knowledge and consent. Based on this recently unveiled discovery by Mott – and never disclosed by GRI – a temporary restraining order and preliminary injunction is necessary from this Court to ensure that GRI discontinue using Mott's image.

# I.  PROCEDURAL BACKGROUND

## A.  Mott's Allegations in Her Previously Filed Complaint against Guaranteed Rate, Inc.

On or about September 9, 2020, Mott filed her Complaint and Jury Demand, in the instant case, Case No. 20-cv-5322, against GRI for violations of the Lanham Act, 15 U.S.C. § 1125 (A)(1)(A) for false endorsement; violations of 15 U.S.C. § 1125 (A)(1)(B) for false advertisement; violation of Illinois' Right to Publicity Act, 765 ILCS 1065/1; and violations of Illinois' Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1. Specifically, the instant action was filed against GRI for its repeated and continued use of Mott's name and image for purposes of marketing and contacting Mott's customers contained in her customer database as well as to the general public following Mott's resignation from GRI. Despite Mott's resignation, GRI immediately began utilizing deceptive practices to deceive Mott's customers in her database and the general public. Indeed, GRI actively contacted and solicited Mott's existing and past clients and borrowers by, among other things, sending individual postcards to each person and/or entity on Mott's client list/database which contained Mott's name and image and falsely represented to her clients that Mott remained employed at GRI. In addition, GRI employees actively contacted, through telephone and email, numerous Mott clients to solicit business after Mott left GRI's employment without informing her clients that Mott was no longer employed with GRI. This scheme of deception to market to and to steal Mott's clients, was an intentional scheme against Mott because she resigned and went to work for Cross Country Mortgage, a company that was in litigation with GRI at the time.

## B.  This Court Stayed the Instant Complaint Pending Arbitration On the Merits of Mott's Claims for Violations of the Lanham Act, Right to Publicity Act and Consumer Fraud and Deceptive Practices

On or about November 9, 2020, Defendant GRI filed its Motion to Enforce the Arbitration Agreement and Stay Litigation. On November 18, 2020, this Court granted GRI's Motion to stay the Federal Court case in order for the arbitrator to determine whether or not the merits of the case should be arbitrated. (dkt. # 15.) Accordingly, this Court stayed the matter and Mott is currently pursuing her Lanham Act claims for false endorsement and false advertisement as well as her claims for violation of Illinois' Right to Publicity Act, 765 ILCS 1065/1 and Illinois' Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 in the pending arbitration. *Id.*

### C. Mott Recently Discovered GRI Using Her Name and Image on Its Webpage Portal Requires The Entry of a Temporary Restraining Order and Preliminary Injunction

Although the instant matter has been stayed, Mott brings this Motion for Entry of Temporary Restraining Order and Preliminary Injunction pursuant to the exception to the mandatory arbitration provision contained in the employment agreement between Mott and GRI.[1] It was recently discovered and unbeknownst to Mott, GRI is using Mott's image and name on GRI's webpage portal of active online accounts providing false information to the general public, including Mott's past clients despite Mott's prior cease and desist letters to GRI and despite the pending arbitration of Mott's counterclaims against GRI.

As detailed in this Memorandum, GRI has continued to engage in its unfair and deceptive practices in violation of 15 U.S.C. § 1125 (A)(1)(A) for false endorsement; 15

---

[1] While there is an issue of whether the 2019 employment agreement or the 2014 employment agreement between Mott and GRI applies, the mandatory arbitration provision contained in both agreements are nonetheless the same. For purposes of this Motion, Mott will refer to the 2014 Employment Agreement for the mandatory arbitration provision and its exceptions.

U.S.C. § 1125 (A)(1)(B) for false advertisement; and Illinois' Right to Publicity Act, 765 ILCS 1065/1 without Mott's knowledge and consent. GRI has used and continues to use Mott's name and image to unfairly compete with Mott and to solicit Mott's relationships that she has spent over 20 years developing. There is a likelihood of success on the merits. Mott is being irreparably harmed by GRI's wrongful conduct and is entitled to injunctive relief to prevent further irreparable harm and to preserve the status quo during the pending arbitration.

## II.    STATEMENT OF FACTS

### A.  Mott's Employment with GRI

In March 2014, Mott was hired by GRI pursuant to a written employment agreement ("2014 Employment Agreement"). (Comp., ¶ 14.)[2] Mott was hired as a Vice President of Mortgage Lending. *Id.* Mott was an experienced and superior loan officer responsible for originating and closing mortgage loans. (Comp., ¶ 13.) Mott was very successful in attracting clients and borrowers and she generally closed anywhere from $2.5 million to $4 million in loans every month. (Comp., ¶ 15.)  As part of her sales position in originating loans, she amassed a client list and/or database of thousands of borrowers and amassed numerous referral sources of realtors, real estate attorneys, and developers. *Id.* Several hundred of those clients that she developed, she brought over with her to GRI.

Under the terms of Mott's 2014 Employment Agreement, it specifically provided that "***the clients/borrowers of Employee, whether acquired prior to or during Employee's employment with GRI, shall not be included in the definition of Confidential Information***." (A copy of the 2014 Employment Agreement is attached hereinafter and

---

[2] A copy of the Complaint is attached hereinafter and incorporated herein as **Exhibit 1**.

incorporated herein as **Exhibit 2**.) As a result, Mott worked under the specific provision and agreement for five (5) years with the understanding that the clients, borrowers and referral sources that she originated through her sales position at GRI, belonged to her and was not considered Confidential Information belonging to GRI.

On or about January 28, 2020, Mott resigned from GRI because of the toxic environment created by GRI and she went to work for Cross Country Mortgage. (Comp., ¶ 16.)

### B. Mott Sends Cease and Desist to GRI To Stop Falsely Using Her Name And Image to Mott's Customers and the General Public

Prior to filing the instant case, on April 8, 2020, counsel for Mott sent to in-house counsel for GRI, Anwar Shatat ("Shatat"), a letter containing, among other things, a cease and desist from using Mott's name, image and voice for GRI's commercial gain to the public, including Mott's clients that she developed over twenty (20) years in the mortgage origination industry. (A copy of the April 8, 2020 cease and desist letter is attached hereinafter and incorporated herein as **Exhibit 3**.) Specifically, counsel for Mott identified post cards that were sent by GRI and dated February 20, 2020. (Comp., ¶¶ 17-18.) The post cards contained Mott's picture and identified her work address located at 19235 Wolf Road, Suite 100, Mokena, Illinois and her NMLS license number being associated with GRI. *Id.* However, that information was false because Mott had resigned nearly a month prior.

In the April 8, 2020 cease and desist letter, counsel for Mott explained that use of Mott's image and false information that Mott was still a loan originator at GRI and that her license was still with GRI was deceptive and would likely cause confusion or mistake among the public and Mott's clients. (**Ex. 3**, p. 3.) In addition, counsel for Mott explained

in that cease and desist letter that GRI had continued to use Mott's voicemail recordings that were in place prior to Mott's resignation. *Id*. Indeed, as of April 1, 2020, over 2 months after Mott had resigned, GRI was still utilizing Mott's voicemail message for the number located at the Mokena Branch. Furthermore, counsel for Mott advised Shatat that as of April 1, 2020, Mott's sales assistant, Lauren Mitchell ("Mitchell"), who still worked at GRI, was still using her voicemail which stated that she was still Mott's assistant. *Id*.

As a result of GRI's continued use of Mott's name, image and voice, counsel for Mott requested in that April 8, 2020 letter, among other things, that "GRI immediately cease and desist using Mott's image for GRI promotional and marketing materials and dispose of all signage, business cards, any other promotional advertising that contain Ms. Mott's image, information or voicemail recordings." (**Ex. 3**, p. 3.) Counsel for Mott explained that the GRI's use of Mott's image and name in connection with GRI, when she no longer worked for GRI, caused irreparable harm and would continue to cause her irreparable harm in the future unless GRI discontinued its use.

In response, on April 28, 2020, Shatat sent a letter to counsel for Mott claiming that the GRI's marketing team was "to discontinue all marketing campaigns initiated by your client." (A copy of the April 28, 2020 response letter is attached hereto and incorporated herein as **Exhibit 4**.)

### C.  Mott Filed the Instant Action against GRI on September 9, 2020

The parties were unable to settle the disputed matter arising from GRI's use of, among other things, Mott's name and image, and on September 9, 2020, Mott filed the instant action in this Court for GRI's deceptive acts following Mott's resignation. Specifically, the instant Complaint alleged, among other things, that on February 18, 2020,

GRI sent out a mass post card mailing to all of Mott's clients on her database. (Compl., ¶ 17.) Mott's database included in excess of 5,000 customers. *Id*. Then again, on February 20, 2020, GRI sent an additional mass post card mailing to the client on Mott's customer database. (Compl., ¶ 18.) Again, the post cards contained Mott's image and identifying her as the VP of Mortgage Lending/New Construction Specialist for GR. (A copy of the postcard is attached hereinafter and incorporated herein as **Exhibit 5**.) The post card also included contact information for Mott at GRI located at 19235 Wolf Road, Suite 100, Mokena, IL 60448 as well as an email address of <u>Rebecca.mott@rate.com</u>. *Id*. The post card also identified Mott's NMLS number as still being associated with GRI. *Id*. However, Mott never consented for GRI to continue to use her name and image following her resignation. The information contained on the post cards were false because Mott was no longer working at GRI, but instead, was working at a competitor, Cross Country Mortgage, at the time. (Compl., ¶¶ 18, 22, 23.)

In addition, GRI continued to send emails from Mott's GRI email address well after Mott's resignation which appeared to customers that the emails were coming directly from Mott. (Compl., ¶ 20.) However, Mott did not (and could not) send those emails because she had no access to her email account after her resignation. Specifically, GRI sent several emails stating, among other things, on February 4, 2020, "Hi Daniel and Lauren, Your loan is "Clear to Close,"…As always, if you have any questions, please feel free to contact me directly," or on February 3, 2020, "Hi Joshua and Kelly, a quick update: Your loan was submitted…As always, contact me directly with any questions!"(A copy of a sample of emails is attached hereto as **Exhibit 6**.) Those emails contained false and deceptive information to the consumers because (1) they provided that Mott was still the VP or

Mortgage Lending and Branch Manager; (2) they falsely provided that she was still located at the GRI office located at 19235 Wolf Road, Suite 100, Mokena, IL 60448; (3) falsely provided that Mott's NMLS was still associated with GRI; and (4) falsely provided that Mott could be contacted at the phone number and email address associated with GRI. (*Id.*; (Compl., ¶¶ 26, 33-34.))

As a result of the April 8, 2020 cease and desist letter as well as the filing of the instant action against GRI on September 9, 2020, GRI was fully aware of Mott's claims against GRI for its deceptive and improper use of her name, likeness and image in violation of the Lanham Act, the Right to Publicity Act and Consumer Fraud and Deceptive Practices Act. In addition, GRI was fully aware of Mott's refusal to consent to GRI's continued use of Mott's name, likeness and image whether through marketing, advertising, email's voicemails or in any other manner. (**Exhibit 3**.)

### D. Mott Recently Discovered GRI's Current Use of Mott's Name and Image and Providing False Information Notwithstanding the Cease And Desist Letter and the Pending Arbitration Claims

Remarkably, it has recently been discovered, within the last few weeks that GRI has continued to deceptively use Mott's name, likeness and image without Mott's consent and knowledge for its commercial gain and to the detriment of Mott which creates a likelihood of confusion to the customer. Specifically, Mott has recently received and become aware of several instances where GRI continues to use and market Mott's image and name and falsely portraying to the consumer: (1) that Mott is still their loan officer at GRI; (2) that Mott can be contacted at GRI; (3) that Mott can be contacted at the email address rebeccamottpod@rate.com; and (4) that Mott's NMLS is still associated with GRI. (**Exhibit 7**, Mott Affidavit, ¶¶ 8, 12, 18-20.)

According to the recent revelation by Mott, GRI maintains a webpage portal at www.rate.com for online accounts of individuals who have obtained a residential loan from GRI ("myAccount"). (**Group Ex**. **8**; **Ex. 9**, Pfeifer Affidavit, ¶ 4; **Ex. 10**, Storino Affidavit, ¶¶ 4-5.) The myAccount allows GRI account holders and/or borrowers to manage their accounts, loans, applications, etc. with GRI.  (**Ex. 10**, Storino Affidavit, ¶ 5.) Within the last week, customers of GRI who have active myAccounts notified Mott that GRI has falsely identified Mott on GRI's webpage portal, with her picture and contact information, as working at GRI and identifying her as a loan officer at GRI. (A copy of several screenshots of the myAccounts are attached hereinafter and incorporated herein as **Group Exhibit 8**.)  Based on this information, Mott performed an investigation with her various past clients when she was employed at GRI. (**Ex. 7**, Mott Affidavit, 17-18.) Significantly, Mott's discovery has revealed that GRI's webpage portal contains Mott's picture; identifies Mott as the loan officer; identifies Mott's NMLS number being associated with GRI; contains a purported contact number for Mott; and contains Mott's current purported email address of rebeccamottpod@rate.com. (**Ex. 7**, Mott Affidavit, ¶ 19-20; **Group Ex. 8**; **Ex. 9**, Pfeifer Affidavit, ¶ 4-6; **Ex. 10**, Storino Affidavit, ¶ 4-6.) In addition, certain myAccounts located on GRI's webpage portal provide that Mott is the loan officer and she should be contacted at GRI related to any questions the consumer may have; however, Mott was never the loan officer that closed the loan for those certain clients. (**Ex. 9**, Pfeifer Affidavit, ¶¶ 7-8.) The information provided on GRI's webpage portal related to Mott is false and deceptive to Mott's past clients and as well as the general public who have active online accounts. (**Ex. 7**, Mott Affidavit, ¶ 19, 22-23; **Ex. 9**, Pfeifer Affdavit, ¶ 9; **Ex. 10**, Storino Affidavit, ¶ 8.)

## III.    ARGUMENT

The Lanham Act specifically provides that the federal courts "shall have power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable," to prevent a violation under subsection 43(a) of the Lanham Act. 15 U.S.C. § 1116. The Seventh Circuit uses a two-step analysis to assess whether preliminary injunction relief is warranted. *Luxottica Group S.p.A v. Light in the Box Ltd*., 2016 U.S. Dist. LEXIS 144660 (N.D. Ill. Oct. 19, 2016).[3] "In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he or she will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he or she has a reasonable likelihood of success on the merits." *Id*., *citing Turnell v. CentiMark Corp*., 796 F.3d 656, 661-62 (7th Cir. 2015). If the movant makes the required threshold showing, then the court moves to the second step and considers "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties," *i.e.* the public interest. *Id*. The court then weighs these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Ty, Inc. v. The James Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001), *quoting Abbott Labs v. Mead-Johnson & Co*., 971 F.2d 6, 11 (7th Cir. 1992). The weight is on a sliding scale approach which is the more likely the plaintiff will

---

[3] Fed.R.Civ.P. 65 authorizes the issuance of preliminary injunctions and temporary restraining order and the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *Prudential Ins. Co. of Am. v. Hosto*, No. 08-674, 2008 WL 4482882, at *3-5 (S.D. Ill. Oct. 2, 2008).

succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*; *see also, Eli Lily & Co. v. Natural Answers, Inc*., 233 F.3d 456, 461 (7th Cir. 2000) (The greater the movant's likelihood of success on the merits, the less the balancing of harms need be in his favor).

A.      **This Court Has Jurisdiction to Issue Preliminary Injunction Pending An Arbitration**

As an initial matter, even though this Court stayed the case pending arbitration, it has the authority to grant an injunction.

Where parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration. The standard for such an injunction is the same as for preliminary injunctions generally." *General Mills, Inc. v. Champion Petfoods USA, Inc.,,* 2020 U.S. Dist. LEXIS 13408 (S.D.N.Y. Jan. 27, 2020), *quoting Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015); *see also, Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 238 (2d Cir. 2016) ("Generally, courts should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration"). "When a preliminary injunction is sought to preserve the status quo pending arbitration, the district court should hold a preliminary injunction hearing. *IDS Life Ins. Co. v. SunAmerica, Inc*., 1996 U.S. Dist. LEXIS 5568 (N.D. Ill. April 25, 1996); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214 (7th Cit. 1993) ("district courts are not precluded as a general matter from issuing preliminary injunctive relief pending arbitration…Pro-arbitration policies…are furthered, not weakened, by a rule permitting a district court to preserve meaningfulness of the arbitration by granting injunctive relief").

Not only does the district court have the jurisdiction to enter a preliminary

injunction pending an arbitration on the merits, but the arbitration provision at issue in the case specifically carves out an exception to mandatory arbitration for injunctive and equitable relief.

**(c) Exclusions**

The mandatory arbitration provisions of this Agreement do not apply to: (i) any claim by you for workers compensation benefits or unemployment compensation benefits; (ii) ***any claim for injunctive or equitable relief, including without limitation claims related to unauthorized disclosure of confidential information, trade secrets or intellectual property***; or (iii) any action brought relating to or arising out of any non-solicitation violations.

(See **Exhibit 2**, p. 15.) (emphasis added.)

As a result, this Court has the jurisdiction and ability to enter a preliminary injunction pursuant to the case law and under the terms of the exception of the mandatory arbitration provision for seeking injunctive relief to preserve the status quo pending the merits of the arbitration.

> **B.** **Mott Will Likely Succeed on the Merits Of Her Claim For Violations of the Lanham Act and Right to Illinois' Right to Publicity Act**

To obtain a preliminary injunction, a plaintiff "must only show that his chances to succeed on his claims are 'better than negligible,'" which "is a low threshold." *Whitaker v. Kenosha Unified Sch. Dist*., 858 F.3d 1034, 1046 (7th Cir. 2017). In the instant case, there is a likelihood of success in establishing that these false and deceptive webpage portal postings by GRI violates the Lanham Act 15 U.S.C. § 1125 (A)(1)(A) for false endorsement; 15 U.S.C. § 1125 (A)(1)(B) for false advertisement because as the Seventh Circuit has explained, one bases of liability under the Lanham Act includes "false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device."

*L.S. Health & Son, Inc. v. AT & T Info. Sys., Inc*., 9 F.3d 561, 575 (7th Cir. 1993). A "false endorsement claim based on the unauthorized use of a [person's] identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e*., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishable characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Maremont v. Susan Fedman Design Group, Ltd*., 772 F. Supp. 2d 967, 971 (N.D. Ill. March 15, 2011), *quoting Waits v. Frito-Lay, Inc*., 978 F.2d 1093, 1110 (9th Cir. 1992); *See also, Stayart v. Yahoo! Inc*., 651 F.Supp.2d 873, 880 (E.D. Wis. 2009) ("False endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service.")

In addition, under Illinois' Right to Publicity Act, 765 ILCS 1075/30(a), "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons." *Maremont*, 772 F. Supp. at 971.

Mott easily meets the low threshold because her chances to succeed on her claims are "better than negligible." In particular, it is undisputed that as of today's date, GRI continues to utilize Mott's name and image on GRI's web portal that it maintains for several current and past customers of GRI. (See **Group Exhibit 8**.) As evidenced by the screenshots contained in **Group Ex. 8**, Mott has recently confirmed from her prior customers that GRI continues to post Mott's image and name as, a minimum, being associated with GRI on their active myAccounts at GRI. (**Ex. 7**, Mott Affidavit, ¶ 20.) Mott has not consented, but

instead, has previously notified GRI *via* her April 8, 2020 cease and desist letter and her instant lawsuit that she has never consented to GRI using her name and image after her resignation from GRI on January 28, 2020. (**Ex. 7**, Mott Affidavit, ¶¶ 7, 9, 21.) Each and every screenshot containing Mott's name and image contain a false designation of association as well as a false endorsement of GRI by Mott. (**Ex. 7**, Mott Affidavit, ¶¶ 16, 19.) Mott continues to work in the industry as a loan originator, but she currently works for a competitor of GRI. In addition, each and every screenshot for the various individuals' myAccounts also contains false information such as the telephone number and email address to reach Mott. On certain myAccounts, it contains an email address of rebeccamottpod@rate.com to Mott's former customers to contact Mott. (**Ex. 7**, Mott Affidavit, ¶¶ 19-20, 23.) However, customers of GRI's myAccounts would not be able to contact Mott at rebeccamottpod@rate.com because she has not worked at GRI for the past two years. On other myAccounts, it has other GRI employee's email address below Mott's name and picture. (**Group Ex**. 8.) In addition, the phone number provided in the customers of GRI's myAccounts is not Mott's phone number, but instead, phone numbers to individuals employed at GRI. (**Ex. 7**, Mott Affidavit, ¶ 19; **Group Ex. 8**.) Under the myAccounts provided in **Group Exhibit 8**, it provides those account holders with the ability to monitor their accounts, payment information, or submit applications for new loans or for refinance(**Group Ex. 8; Ex. 10**, Storino Affidavit, ¶ 4;.) Not only that, but each of the GRI myAccounts provide that Mott is the loan officer at GRI that can answer questions regarding the loan or GRI. *Id*. Remarkably, for a few of the individuals who provided their screenshots of their myAccounts at GRI, Mott was not the loan officer of the loan that was closed with GRI, but was merely the one responsible for introducing the client to GRI. (**Ex. 9**, Pfeifer

Affidavit, ¶¶ 5, 7, 8.) Specifically, for Steve Pfeifer ("Pfeifer"), he was an out of state borrower located in Pennsylvania. *Id*. Mott was not the loan officer that closed on his loan in Pennsylvania. *Id*. In fact, she could not be the loan officer because Pfeifer was an out of state client. Instead, Mott was merely the process manager on the loan file. In addition, with respect to Kiersten Voss ("Voss"), Mott was also not the loan officer that closed the loan with GRI although Mott introduced Voss to GRI for her loan. (**Ex. 7**, Mott Affidavit, ¶ 14.) Yet, even though Mott was not the loan officer for those two individuals, GRI continues to use Mott's name and image on GRI's webpage portal identifying Mott as the loan officer for those loans and using her name and image as a vehicle to maintain GRI's relationship with those individuals.

Clearly, GRI has misappropriated and has continued to use Mott's name and image as a vehicle to seek the relationships that Mott has previously developed without Mott's consent and knowledge. Unfortunately, neither a cease and desist nor a filed lawsuit has deterred GRI from ceasing to use Mott's name and image for its own commercial gain and to the detriment of Mott's reputation and goodwill. The use of Mott's name and image without her consent is undisputed. (**Ex. 7**, Mott Affidavit, ¶ 21, 23.) The use of Mott's name and image on GRI's webpage portal and promoting Mott as a loan officer at GRI – which is false; providing an email address that Mott can be contacted at rebeccamottpod@rate.com – which is false; providing a phone number to contact Mott at GRI – which is false; providing Mott's NMLS number as being associated with GRI – which is false, constitutes a violation of the Lanham Act for false association, false advertising and a violation of the Right to Publicity Act. GRI's use of Mott's name and image to prey on Mott's relationships

and to unfairly compete with Mott has caused and will continue to cause irreparable harm by unfairly competing with Mott for her relationships, damaging her damaging her reputation and goodwill and loss of market share. (**Ex. 7**, Mott Affidavit, ¶ 22.)

C. **Mott Lacks An Adequate Remedy at Law and Will Suffer Irreparable Harm If an Injunction is Not Granted**

In the Seventh Circuit, "it is well settled that injuries arising from the Lanham Act are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Pomatek Industries, Ltd. v. Equitrac Corp*., 300 F.3d 808, 813 (7th Cir. 2002), *citing Abbott Labs*., 971 F.2d at 18 (reversing district court's decision denying preliminary injunction). "This presumption...is based upon the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Abbott Labs*., 971 F.2d at 16.

Irreparable harm is harm that is "not fully compensable or avoidable by the issuance of a final judgment (whether a damages judgment or a permanent injunction or both) in the plaintiff's favor." *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc*., 735 F.3d 735, 740 (7th Cir. 2013).

False and misleading advertising, association and endorsement like that perpetrated by GRI in this case, can cause "lingering, incalculable" effects, loss of market share, and loss of goodwill that are often difficult or impossible to quantify, all of which renders legal relief inadequate and the harm to Mott irreparable. *Abbott Labs*, 971 F.2d at 16-17; *Huawei Techs. Co. v. Motorola, Inc*., 2011 U.S. Dist. LEXIS 17165, *29-30 (N.D. Ill. Feb. 22, 2011) ("A party is irreparably harmed where the damages the party suffers are difficult to calculate...")

As explained above, GRI's use of Mott's name and image on its webpage portal has caused and will continue to cause irreparable harm by unfairly competing with Mott for her relationships, damaging her reputation and goodwill and loss of market share. *Kraft Foods Grp. Brands, LLC*, 735 F.3d at 740 (Courts consider consumer confusion and the loss of goodwill to be irreparable because of "the difficulty of quantifying the likely effect on a brand.")

Mott lacks an adequate remedy at law because money damages cannot adequately compensate for the loss of those relationships and good will, and because such damages are difficult to quantify. The extent of the harm to Mott's reputation and the goodwill associated therewith and the possible diversion of customers due to improper use of Mott's name and image being associated with GRI are both irreparable and incalculable, thus warranting immediate halt to GRI's false, deceptive and infringing activities through injunctive relief. *See Promatek Industries, Ltd*., 300 F.3d at 813 (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law.) Mott will continue to suffer immediate and irreparable injury, loss or damage if a preliminary injunction is not issued. (**Ex. 7**, Mott Affidavit, ¶¶ 22-24.) Furthermore, GRI will continue to use Mott's image and name and continue to provide false information to the public if a preliminary injunction is not granted. *Id*.

### D. The Balance of Harms And Public Interest Weigh Decidedly In Mott's Favor

The balancing of harms favors Mott. The only effect of injunctive relief on GRI would be to prevent GRI from making false and misleading statements, deceiving customers, misappropriating or using Mott's name and image to solicit Mott's customers

and relationships.

Considerations of public policy weigh heavily in favor of injunctive relief. The provisions of the Lanham Act and the Illinois Right to Publicity Act all reflect significant public policies to promote fair competition and prohibiting unfair competition in the form of false and misleading representations and deceptive practices. Prohibiting GRI from using Mott's name and image to deceptively provide false and misleading information to customers is in the public interest. *See Shashi, Inc. v. Ramada Worldwide, Inc*., No. 505-00016, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and prevent consumer confusion.") There is no possible reason that enforcing these public policies to prevent GRI from continuing to provide false and deceptive information to customers by not allowing it to continue to use Mott's name and image will cause GRI any harm within the lending industry. *Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225, *10 (N.D. Ill. Nov. 17, 2015) *citing Park 'N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 198 (1985) ("because trademarks desirably promote competition and the maintenance of product quality, Congress determined that sound public policy requires that trademarks should receive the greatest protection that can be given them.") GRI's use of Mott's name and image on its webpage portal and providing contact information for her when she has not worked at GRI for over two years is false and misleading to the general public. (**Ex. 9**, Pfeifer Affidavit, ¶ 9; **Ex. 10**, Storino Affidavit, ¶¶ 6, 8.)

Mott's need for immediate injunctive relief is even more necessary for the additional reason that GRI has demonstrated that it cannot be trusted to self-police with the removal

of Mott's name, image and providing of false and deceptive information to Mott's customers or the general public. Despite sending the April 8, 2020 cease and desist letter and despite the filing of the instant action and subsequently pursing her Lanham Act and Right to Publicity claims in the pending arbitration, GRI still has continued to falsely and deceptively use Mott's name and image on its webpage portal unbeknownst to Mott. Had it not been for one of Mott's customer relationships notifying her of GRI using and advertising Mott's name and image being associated with GRI on its website portal, Mott would have never known. GRI's repeated refusal to take the complete and necessary corrective action, even after being advised to discontinue the use of Mott's name and image and their deceptive conduct, there is an obvious threat that, without an immediate injunction, GRI will continue to engage in the same type of deceptive and improper behavior. *See, Kraft Food Holdings, Inc. v. Helm*, 205 F.Supp.2d 942, 956 (N.D. Ill. June 7, 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames or any other keywords on his websites.").

## V.      CONCLUSION

For the foregoing reasons, Mott's motion for temporary restraining order and preliminary injunction should be granted, together with such additional relief as the Court may deem appropriate.

<div style="margin-left:40%">

Respectfully submitted,

REBECCA MOTT

By: /s Harry Channon
One of her attorneys

</div>

Harry O. Channon
Allie K. Haling
FRANKLIN, GREENSWAG, CHANNON & CAPILLA, LLC
181 Waukegan Road, Suite 205
Northfield, IL 60093
Tel: (847) 701-2250
Fax: (847) 501-2390
Atty. No.: 65401
[hchannon@fgcclaw.com](mailto:hchannon@fgcclaw.com)
[ahaling@fgcclaw.com](mailto:ahaling@fgcclaw.com)

## **CERTIFICATE OF SERVICE**

I, Harry Channon, an attorney, hereby certify that on April 15, 2022, I served a copy of the foregoing Plaintiff's Memorandum of Law in Support of her Motion for Entry of Preliminary Injunction via Pacer/ECF electronic system and *via* email on counsel of record.

/s Harry Channon